IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-03115-PAB

In re: DANIEL J. CUPIT

     Debtor

_____

MACARTHUR COMPANY,

     Plaintiff-Appellee,

v.

DANIEL J. CUPIT,

     Defendant-Appellant.

_____

### ORDER

_____

This matter is before the Court on defendant-appellant Daniel Cupit's appeal of

the judgment entered by the bankruptcy court.  The Court exercises jurisdiction

pursuant to 28 U.S.C. § 158(a)(1).

## I.  BACKGROUND[1]

### A.  Professional Roofing, Inc.

In 2001, Mr. Cupit started Professional Roofing, Inc. ("PRI").  R. I at 108.[2]  PRI

specializes in installing roofing and exterior construction work on residential and

commercial buildings.  R. II at 7:4-8.  Mr. Cupit successfully operated PRI for several

_____

[1]The following facts are taken from unchallenged portions of the Bankruptcy
Court's order and relevant portions of the record.

[2]"R. I" designates volume one of the record, which is filed as Docket No. 10-1
and "R. II" designates volume two of the record, which is filed as Docket No. 10-2.

years.  R. I at 108.  In July 2010, Mr. Cupit sold PRI to Orie Rechtman.  R. I at 10:7-11:8.  Mr. Cupit testified that PRI was in good financial condition at the time of the sale and was current on its payables.  R. II at 11:9-15.

Mr. Cupit testified that Mr. Rechtman failed to make post-sale payments to Mr. Cupit.  R. II at 14:3-11.  In December 2010, after Mr. Cupit threatened litigation against Mr. Rechtman, Mr. Cupit and Mr. Rechtman reached an agreement whereby Mr. Cupit would reacquire ownership of PRI.  *Id.* at 16:4-17:4.  On January 1, 2011, Mr. Cupit regained control of PRI.  *Id.* at 18:22-19:1.  Mr. Cupit testified that, over the next six to nine months, he discovered that Mr. Rechtman had taken over $200,000 out of the business for personal use, maxed out PRI's line of credit, and accumulated $600,000 in payables, which PRI's receivables could not cover.  *Id.* at 19:5-21:8.  Mr. Cupit injected $200,000 of his personal funds into PRI, but PRI nevertheless struggled to pay its debts.  R. I at 109.

In 2011, PRI began purchasing roofing materials from plaintiff-appellee MacArthur Company ("MacArthur").  R. I at 109.  The bankruptcy court's order states that Mr. Cupit kept a "Job Cost Detail" record for each job, which reflected how much PRI paid for materials, the balance owed to the supplier, the amount charged to PRI's customer, and the amount received PRI received from its customer.  *Id.* (citing "Ex. B.").  With respect to those roofing projects where PRI purchased supplies from MacArthur, the revenue from such projects was deposited in PRI's general operating account and was used to pay other, unrelated expenses.  *Id.*  Mr. Cupit testified that, during the relevant time period, he was attempting to pay off PRI's oldest bills first, regardless of

who the creditor was.  *Id.*; *see, e.g.*, R. I at 48:25-49:2.  Based upon the Job Cost Detail records, the bankruptcy court found that PRI received full payment for 24 roofing projects for which PRI used materials from MacArthur, but did not pay MacArthur in full for such supplies.  R. I at 109.  The unpaid balance to MacArthur is $79,625.94.  *Id.*

The bankruptcy court found that several other supplies sued PRI and Mr. Cupit in state court for unpaid invoices and violation of the Colorado Mechanic's Lien Trust Fund Statute (the "Construction Trust Fund Statute"), Colo. Rev. Stat. § 38-22-127(1).  R. I at 109 (citing "Ex. 6, at 6-6; Ex. 10").  The first such suit was filed in early August 2011 by American Roofing Supply, Inc. ("ARS") (the "ARS suit").  ARS's complaint (the "ARS complaint") alleged violations of the Construction Trust Fund Statute against PRI.  *Id.* at 115.  Due in part to these lawsuits, PRI filed a Chapter 11 bankruptcy petition in September 2012.  R. II at 25:10-16.  PRI's Chapter 11 plan was confirmed and PRI continues to operate.  R. II at 25:22-26:6.  On February 12, 2013, Mr. Cupit filed his individual petition under Chapter 7.  R. I at 109; *see also In re Cupit*, No. 13-11914-EEB (Bankr. D. Colo. Feb. 12, 2013).  Mr. Cupit's personal bankruptcy case was closed on August 1, 2014.  *In re Cupit* (Docket No. 27).

### B.  Adversary Proceeding

On April 3, 2013, MacArthur filed an adversary proceeding against Mr. Cupit alleging a nondischargeability claim pursuant to 11 U.S.C. §§ 523(a)(2) and (4).  R. I at 4, 6.  MacArthur alleged that Mr. Cupit received disbursements from PRI's customers and, pursuant to the Construction Trust Fund Statute, was required to hold such funds in trust to ensure that MacArthur was paid.  R. I at 5.  MacArthur claimed that Mr. Cupit

3

committed a defalcation by failing to hold those funds in trust and failing to pay it the trust funds. *Id.* MacArthur alleged that Mr. Cupit's violation of the Construction Trust Fund Statute constituted civil theft pursuant to Colo. Rev. Stat. § 38-22-127(5) and § 18-4-401 and that, as a result, MacArthur was entitled to treble damages as well as attorney's fees and costs. *Id.*

Prior to trial, the parties filed witness and exhibit lists. R. I at 10-12, 14-17. On October 21, 2013, the bankruptcy court held a trial on MacArthur's claims. R. I at 24. The bankruptcy court heard testimony from Mr. Cupit and MacArthur branch manager Duane Ehrhardt. R. I. at 37, 62. The bankruptcy court received into evidence MacArthur's trial Exhibits 1, 3, 4 (excluding page 4-20), 5, and 6 as well as Mr. Cupit's trial Exhibits B, C, and D. R. I at 24.[3] Based upon the trial transcript, Exhibit 1 is entitled Application for Open Credit and was signed by Mr. Cupit on May 17, 2011, R. I at 39:2-12; Exhibit 3 appears to contain invoices from MacArthur to PRI, *id.* at 49:7-13; Exhibit 4 was described as a "series of unconditional waivers and releases upon payment," *id.* at 52:25-53:5; Exhibit 5 was not described, *id.* at 55:19-56:4; Exhibit 6 is the Petition in Bankruptcy Schedules that PRI filed in the bankruptcy court, *id.* at 58:4-9; Exhibit B contains Job Cost Detail records from 24 separate PRI projects, *id.* at 40:5-13; Exhibit C is a summary of payments PRI made to MacArthur from June 1, 2011 to January 31, 2012, *id.* at 56:6-12; and Exhibit D is the "invoice amounts that [PRI] showed open" as of September 1, 2012. *Id.* at 46:9-12. At the close of MacArthur's case, Mr. Cupit moved for a directed verdict, arguing that MacArthur failed to establish

---

[3]All references to an "exhibit" or "exhibits" are to those exhibits admitted in either phase of the bankruptcy court's trial.

that Mr. Cupit acted with the requisite intent under *Bullock v. BankChampaign, N.A.*, ---

U.S. ----, 133 S. Ct. 1754 (2013) .  R. I at 79.  The bankruptcy court stated on the record

that it intended to grant Mr. Cupit's motion for a directed verdict, but would do so in a

written order.  R. I at 86.

The bankruptcy court did not, however, issue a written order granting Mr. Cupit's

motion for a directed verdict.  Rather, on November 20, 2013, the bankruptcy court

issued an order stating that, in light of *Bullock* and the cases interpreting it, "it is not

clear to this Court that it should direct a verdict against the Plaintiff for failing to

establish the necessary mental state required for 'defalcation.'"  R. at 27.  The

bankruptcy court concluded that the parties should be given an opportunity to either

present further argument on this issue and/or to proceed to the conclusion of the trial.

*Id.*  The bankruptcy court heard oral arguments on the issue and determined that it

would defer ruling on Mr. Cupit's motion for a directed verdict until after the conclusion

of trial.  R. at 109-10 (citing Fed. R. Civ. P. 52(c)).

On March 18, 2014, the bankruptcy court reconvened the trial, where Mr. Cupit

presented his case.  R. I at 88.  The bankruptcy court heard testimony from Mr. Cupit

and his wife Lori Cupit and received into evidence MacArthur's Exhibit 10 and Mr.

Cupit's Exhibits E and F.  *Id.*  Based upon the trial transcript, Exhibit 10 appears to be

PRI's answer to the ARS complaint, R. II at 48:22-23; Exhibit E appears to contain PRI

invoices, *id.* at 27:9-14; and Exhibit F appears to be a record regarding Mr. Cupit's

personal loans to PRI.  *Id.* at 31:20-24.  At the conclusion of the evidence, the parties

submitted written closing arguments.  R. I at 89-107.

On July 18, 2014, the bankruptcy court issued a written order.  R. I at 108-22.

The order set forth the relevant background facts and discussed the term "defalcation"

under *Bullock*.  R. I at 108-14.  The bankruptcy court then turned to the question of

whether Mr. Cupit had the requisite mental state to commit a defalcation.  The

bankruptcy court found that Mr. Cupit kept competent records of income and expenses

on each project and that, despite PRI's backlog of payables, Mr. Cupit was making

efforts to pay PRI's bills.  R. I at 114.  The bankruptcy court found that, although Mr.

Cupit had training and experience in the roofing industry, Mr. Cupit "credibly testified . . .

that none of his professional education had addressed fiduciary duties under the

[Construction Trust Fund Statute]."  *Id.*  As a result, the bankruptcy court concluded that

Mr. Cupit's training and industry experience did not support an inference that Mr. Cupit

acted in conscious disregard of his obligations under the Construction Trust Fund

Statute.  *Id.*

The bankruptcy court then found that, on August 5, 2011, ARS sued PRI,

alleging violations of the Construction Trust Fund Statute.  R. I at 115.  The bankruptcy

court acknowledged Mr. Cupit's testimony that, even after being served with the ARS

complaint accusing him of violating the Construction Trust Fund Statute, he remained

unaware of the details of the suit and of his duties under the statute, but did not find

such testimony credible.  *Id.*  Rather, the bankruptcy court noted that Mr. Cupit took

action in response to the lawsuit, such as hiring counsel and filing an answer after an

attempt to negotiate a settlement.  Moreover, the bankruptcy court ruled that the ARS

complaint gave Mr. Cupit

6

an awareness that there was a high probability he owed fiduciary duties to material suppliers under the statute.  To the extent Debtor chose not to read the details of the complaint, such conduct amounts to taking a "deliberate action" to avoid learning of his duties under the Construction Trust Fund Statute.  Based upon these circumstances, the Court finds that by August 5, 2011, Debtor was either willfully blind to or consciously disregarded a risk that his handling of trust funds received on the Jobs would violate a fiduciary duty under the Construction Trust Fund Statute.

*Id.*  The bankruptcy court concluded that such a risk was substantial and unjustifiable because, although Mr. Cupit testified that his purpose in misdirecting the funds was to improve PRI's financial condition, "[s]uch a self-serving interest cannot justify a risk of harm to MacArthur, the trust beneficiary." *Id.*

The bankruptcy court then turned to the question of whether Mr. Cupit's disregard of the risk of violating a fiduciary duty was a gross deviation from the standard of conduct as contemplated by *Bullock*. *Id.*  The bankruptcy court noted that *Bullock* did not precisely explain how to resolve such a question and, as a result, turned to the commentary to the Model Penal Code, which explained that a factfinder's analysis should "focus on the defendant's perceptions and, given those perceptions, make a value judgment as to whether the defendant's conduct deserves to be sanctioned." *Id.* The bankruptcy court found that Mr. Cupit was aware of a high likelihood that his practice of paying oldest bills first would cause trust funds to be spent on unrelated expenses, but nonetheless continued in this practice for several months.  R. I at 115-16.  Such conduct, the bankruptcy court concluded, "amounts to a gross deviation from the standard of conduct that a law-abiding contractor would follow."  R. I at 116.

The bankruptcy court determined that MacArthur established a defalcation only as to Mr. Cupit's conduct after August 5, 2011 – the date on which the bankruptcy court

concluded that plaintiff consciously disregarded or was willfully blind to his duties under the Construction Trust Fund Statute.  *Id.*  Citing Exhibit B, the bankruptcy court noted that the Job Cost Detail records for the projects at issue showed that PRI received payment from its customers from June 16, 2011 through February 3, 2012.  *Id.*  The bankruptcy court concluded that it was impossible to determine the exact date that particular trust funds were misdirected, but found that PRI received approximately 60% of the trust funds after August 5, 2011.  *Id.*  As a result, the bankruptcy court concluded that only 60% of the debt owed to MacArthur, or $47,775.56, was nondischargeable pursuant to 11 U.S.C. § 523(a)(4).  *Id.*  The bankruptcy court found that MacArthur did not, however, establish the elements of embezzlement or larceny as it related to Mr. Cupit's conduct prior to August 5, 2011, and declined to find any additional debts nondischargeable.  R. I at 121.

The bankruptcy court concluded that, once a debt has been determined to be nondischargeable under § 523(a)(4), all ancillary obligations that are part of that debt – including treble damages – are also nondischargeable.  R. I at 117.  The bankruptcy court concluded that Mr. Cupit knowingly used trust funds in a manner that was certain to deprive MacArthur of such funds and found that, pursuant to Colo. Rev. Stat. § 38-22-127(5), § 18-4-401, and § 18-4-405, Mr. Cupit had committed theft and, as a result, MacArthur was entitled to treble damages.  R. I at 117-18.  The Court ordered further briefing on the issue of prejudgment interest and attorney's fees.  R. I at 119.

On November 3, 2014, the bankruptcy court ordered that, including the $47,775.56 debt owed MacArthur, treble damages, prejudgment interest, and attorney's fees and costs, $154,604.86 was nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

8

R. I at 125.  On November 3, 2014, the bankruptcy court entered judgment in favor of MacArthur in the amount of $154,604.86.  R. I at 126.

On November 17, 2014, Mr. Cupit filed a notice of appeal.  R. I at 127.  On December 2, 2014, Mr. Cupit's Designation of Record on Appeal and Statement of Issues on Appeal [Docket No. 8] was filed in this case.  Mr. Cupit designated several documents from the bankruptcy court docket, transcripts of both days of trial, "Plaintiff's Trial Exhibits 1, 3, 4 (Excluding pp 4-20), 5, 6 and 10," and "Defendant's Trial Exhibits B, C, D, E and F."  Docket No. 8 at 1-2.  On December 31, 2014, the Clerk of the Bankruptcy Court transmitted the record, which included documents from the bankruptcy court docket and transcripts from both days of trial.  Docket No. 10.  On February 4, 2015, Mr. Cupit filed his opening brief.  Docket No. 15.  The appendix to Mr. Cupit's opening brief includes the bankruptcy court's October 21, 2013 minute order from the first day of trial, the bankruptcy court's November 20, 2013 order reconsidering its intention to grant Mr. Cupit's motion for a directed verdict, the bankruptcy court's July 18, 2014 order, and a document Mr. Cupit describes as a "Summary of Exhibit B."  *See* Docket No. 15-1.  On March 4, 2015, MacArthur filed its response brief, but did not include an appendix, Docket No. 18, and, on March 18, 2015, Mr. Cupit filed his reply brief.  Docket No. 19.  Neither party has attempted to supplement the record.

## II.  STANDARD OF REVIEW

The Court reviews the Bankruptcy Court's legal determinations de novo.  *See In re Baldwin*, 593 F.3d 1155, 1159 (10th Cir. 2010)*.*  The Court also reviews de novo mixed questions of law and fact that primarily involve legal issues.  *See In re Wes Dor*

*Inc.*, 996 F.2d 237 (10th Cir. 1993).  The Bankruptcy Court's factual findings, including

findings regarding intent, are reviewed for clear error.  *See In re Johnson*, 477 B.R. 156,

168 (B.A.P. 10th Cir. 2012); *In re Baldwin*, 593 F.3d at 1159.  The reviewing court must

defer to the facts found by the bankruptcy court "unless it is without factual support in

the record or, after examining all the evidence, we are left with a definite and firm

conviction that a mistake has been made."  *In re Johnson*, 477 B.R. at 168 (quotations

omitted).  If, however, a "lower court's factual findings are premised on improper legal

standards or on proper ones improperly applied, they are not entitled to the protection

of the clearly erroneous standard, but are subject to *de novo* review."  *Id.*

## III.  ANALYSIS

### A.  Sufficiency of Record

The bankruptcy court's order cites to and appears to have relied on various trial

exhibits.  *See, e.g*, R. I at 109.  Similarly, Mr. Cupit's opening brief cites various trial

exhibits in support of his arguments and contends throughout the bankruptcy court's

findings are contrary to the weight of the evidence.  *See, e.g.*, Docket No. 15 at 20-21.

Although Mr. Cupit designated the admitted trial exhibits as part of the record, *see*

Docket No. 8 at 1-2, the admitted trial exhibits are not contained in the record or in Mr.

Cupit's appendix and he has otherwise failed to provide them.[4]  Thus, the issue is

whether Mr. Cupit has provided a record sufficient to decide the issues raised in his

appeal.

---

[4]Although a document designated "Exhibit 1" was attached to MacArthur's closing argument, *see* R. I at 96, it is not the Exhibit 1 admitted at trial, but, rather, a summary MacArthur prepared in support of its closing argument, *id.* at 94, attached to its response brief in this appeal.  Docket No. 18 at 28.

A party seeking to appeal the final order of a bankruptcy court is required to file with the bankruptcy clerk "a designation of the items to be included in the record on appeal and a statement of the issues to be presented."  Fed. R. Bankr. P. 8009(a)(1)(A).[5]  The record on appeal must include, among other things, all items designated by the parties.  Fed. R. Bankr. P. 8009(a)(4).  Moreover, "[i]f the appellant intends to argue on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all relevant testimony and copies of all relevant exhibits."  Fed. R. Bankr. P. 8009(b)(5).  The Bankruptcy Appellate Panel of the Tenth Circuit Rules provide that, "[w]hen the party asserting an issue fails to provide a record sufficient for considering that issue, this Court may decline to consider it."  10th Cir. BAP L.R. 8009-3; *accord* 10th Cir. Rule 10.3.  If the record on appeal "fails to include copies of the documents necessary to decide an issue on appeal, this Court is unable to rule on that issue and m ay summarily affirm the bankruptcy court."  *In re Long*, 255 B.R. 241, 245 (B.A.P. 10th Cir. 2000); *see also In re Tollefsen*, 2008 WL 762487, at *2 (B.A.P. 10th Cir. March 11, 2008) (unpublished) ("the failure to provide this Court with the required transcript is grounds for summary affirmance"); *In re Black*, 130 F. App'x 205, 207 (10th Cir. 2005)

---

[5]The Federal Rules of Bankruptcy Procedure, including Rules 8001-8028, were amended, effective December 1, 2014.  The amended rules "shall govern in all proceedings in bankruptcy cases thereafter commenced and, insofar as just and practicable, all proceedings then pending."  Order of Apr. 25, 2014 adopting amendments to Fed. R. Bankr. P.  Although this case was filed prior to December 1, 2014, Mr. Cupit filed the Designation of Record on Appeal and Statement of Issues on Appeal [Docket No. 8] with the bankruptcy court on December 1, 2014 and the record was filed on December 31, 2014.  Thus, the Court finds that the 2014 amendments to the Federal Rules of Bankruptcy Procedure appropriately govern in this case.

(unpublished) ("in light of Mr. Christensen's failure to provide the proper materials for review, the BAP was entitled to affirm the decision of the bankruptcy court"); *Travelers Indem. Co. v. Accurate Autobody, Inc.*, 340 F.3d 1118, 1121 (10th Cir. 2003) (applying 10th Cir. Rule 10.3 in summarily affirming district court).[6]  Thus, before deciding the merits of Mr. Cupit's appeal, the Court will first determine whether Mr. Cupit has provided a sufficient record upon which to decide each of the issues raised in his brief.

Sections I and II of Mr. Cupit's brief discuss defalcation before and after *Bullock*. Docket No. 15 at 11-14.  However, the Court does not understand Mr. Cupit to argue that the bankruptcy court erred in interpreting *Bullock* or otherwise made an incorrect legal determination.

Sections III and IV of Mr. Cupit's brief challenge the bankruptcy court's finding that Mr. Cupit's conduct constituted a gross deviation from the standard of conduct. Docket No. 15 at 14-15.  Mr. Cupit states that "[t]his conclusion of the Bankruptcy Court is the main focus of this appeal" and attacks that conclusion on multiple grounds.  *Id.* First, Mr. Cupit challenges the bankruptcy court's finding regarding Mr. Cupit's intent, which is a determination reviewed for clear error.  *See In re Johnson*, 477 B.R. at 168. The bankruptcy court did not believe Mr. Cupit's testimony that the filing of the ARS suit did not inform him of his duties under the statute and found that, to the extent Mr. Cupit chose not to read the details of the complaint, "such conduct amounts to taking a

---

[6]Although the Tenth Circuit has not yet passed on the question, the recent amendments to the Federal Rules of Bankruptcy Procedure do not appear to have altered this general rule.  *See, e.g.*, *In re Wildhaber*, 2015 WL 4550128, at *5 (B.A.P. 9th Cir. July 28, 2015) (unpublished) (summarily affirming bankruptcy court due to appellant's failure to provide a complete record on appeal).

'deliberate action' to avoid learning of his duties under the Construction Trust Fund Statute." R. I at 115. Mr. Cupit argues that the bankruptcy court should have credited his testimony that he did not become aware of his obligations under the Construction Trust Fund Statute until after he hired counsel to defend against the ARS suit in January 2012. Docket No. 15 at 17-18 (quoting R. II at 33:18-34:16; *id.* at 44:20-24; *id.* at 46:2-23). Thus, Mr. Cupit asks this Court to overturn the bankruptcy court's credibility determination regarding Mr. Cupit's testimony that he did not read or understand the Construction Trust Fund Statute allegations in the ARS complaint. However, the bankruptcy court made a finding of fact that, "[a]t the very least, the complaint gave Debtor an awareness that there was a high probability he owed fiduciary duties to material suppliers under the statute." R. I at 115. A finding of fact is not clearly erroneous unless "it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made." *In re Ford*, 492 F.3d 1148, 1153 (10th Cir. 2007). Because the debtor will ordinarily be the only person able to testify directly concerning his intent and he is unlikely to concede that his intent is wrongful, credibility determinations of the bankruptcy court are entitled to great deference. *Id.* at 1157. Here, Mr. Cupit has not provided "all of the evidence" relevant to the issue of whether the bankruptcy court erred in finding that the ARS complaint gave Mr. Cupit notice of his fiduciary duties under the statute because he has not provided PRI's answer to ARS's complaint (Exhibit 10) or any of the exhibits – such as financial records – that may evidence Mr.

Cupit's conduct in and after August 2011.[7]  *See id.* at 1153.  The Court therefore lacks the necessary evidence to decide this issue and, as a result, will summarily affirm the bankruptcy court's conclusion on this issue.[8]  Moreover, even if the Court were to further consider the merits of Mr. Cupit's argument, such argument is little more than a request to adopt his self-serving interpretation of his own trial testimony and, in so doing, reject the bankruptcy court's findings and credibility evaluations of the same testimony.  Such an argument falls well short of establishing that the bankruptcy court's finding is "completely devoid of minimum evidentiary support displaying some hue of credibility [or] bears no rational relationship to the supportive evidentiary data."  *See id.* at 1154.

Mr. Cupit argues that the bankruptcy court improperly allocated the burden of proof at trial.  Docket No. 15 at 19-20.  His argument is, however, somewhat unclear. Mr. Cupit asserts that MacArthur provided no evidence of intent during the first day of trial in October 2013, which he contends is why the bankruptcy court was initially inclined to grant his motion for a judgment on partial findings on the issue of intent.  *Id.* Mr. Cupit argues that the evidence presented during the second day of trial in March 2014 was insufficient to prompt the bankruptcy court to reconsider its decision to grant

---

[7]Mr. Cupit's reply brief provides a cursory description of the relevant portion of the ARS complaint, Docket No. 19 at 6-7, but his citation to trial testimony does not support that description and his citation to Exhibit 10 is to a document that is not part of the record.

[8]The bankruptcy court also concluded that Mr. Cupit was willfully blind or consciously disregarded a risk that his handling of trust funds received on the jobs would violate the Construction Trust Fund Statute.  R. I at 115.  Regardless of which standard of review is applicable to this particular finding, Mr. Cupit fails to provide the necessary evidence to facilitate this Court's review.

his motion for a judgment on partial findings.  *Id.*  Mr. Cupit argues that "[t]here is no

evidence in the record" showing that he deviated from the standard of care and that

"[t]he only evidence in the record is contrary to the Bankruptcy Court's analysis."  *Id.* at

20.  The Court rejects Mr. Cupit's argument.  First, his argument is belied by the

bankruptcy court's order, which explicitly acknowledges, in multiple instances, that

MacArthur bears the burden of establishing defalcation.  *See, e.g.*, R. I at 116 ("Plaintiff

has therefore established defalcation").  There is therefore no basis to conclude that the

bankruptcy court improperly allocated the burden of proof.  Second, to the extent Mr.

Cupit's argument is premised on the bankruptcy court's reconsideration of his motion

for a judgment on partial findings, it was well within the bankruptcy court's discretion to

"decline to render any judgment until the close of the evidence."  *See* Fed. R. Civ. P.

52(c).  Moreover, it appears that this issue was discussed during a January 13, 2014

hearing before the bankruptcy court, of which Mr. Cupit failed to provide a transcript.

*See in re Tollefsen*, 2008 WL 762487, at *2 ("[i]t is appellant's responsibility to ensure

that a relevant transcript is provided").

Third, because Mr. Cupit urges that the bankruptcy court's finding is unsupported

and contrary to the evidence, he is required to provide all evidence relevant to such a

finding.  His failure to provide the parties' trial exhibits is grounds for summary

affirmance.  *See In re Pepper*, 339 B.R. 756, 761 (B.A.P. 10th Cir. 2006) ("Without a

transcript and exhibits from the trial, this court cannot review the bankruptcy court's

factual findings and will summarily affirm this decision of the bankruptcy court.").

Mr. Cupit next argues that, in determining that his conduct constituted a gross

deviation from the standard of conduct, the bankruptcy court ignored "the undisputed, surrounding facts and circumstances after August 9, 2011." Docket No. 15 at 21. Mr. Cupit contends that multiple factors weigh against the bankruptcy court's conclusion. Citing Exhibit 3, Mr. Cupit argues that he continued to pay MacArthur after August 9, 2011. *Id.* Citing, among other things, Exhibit F, Mr. Cupit argues that there is no evidence that he engaged in self-dealing. *Id.* at 22. Relying upon Exhibit B and Exhibit E, Mr. Cupit argues that he provided an accurate accounting of each project involving MacArthur. *Id.* at 23. Mr. Cupit contends that he is a non-professional fiduciary, such that the bankruptcy court erred in imputing to him detailed knowledge of the Construction Trust Fund Statute. Mr. Cupit fails to provide the exhibits cited in his arguments. Thus, the Court rejects such arguments as unsupported. Moreover, because such arguments are asserted in support of Mr. Cupit's overall assertion that the bankruptcy court's conclusion as to the gross deviation element was unsupported or contrary to the evidence, he was required to provide copies of all relevant exhibits. *See* Fed. R. Bankr. P. 8009(b)(5). The Court will not speculate that the omitted exhibits were irrelevant to the bankruptcy court's determination, nor is such a conclusion apparent. *See In re Black*, 130 F. App'x at 207. Because Mr. Cupit failed to provide the sufficient materials to properly review the bankruptcy court's conclusion regarding the gross deviation element, the Court will summarily affirm this aspect of the bankruptcy court's decision.[9]

_____

[9]In so doing, the Court need not precisely identify what standard of review properly applies to the bankruptcy court's overall conclusion that MacArthur satisfied the gross deviation element. *See In re Johnson*, 477 B.R. at 168. No matter the standard of review, Mr. Cupit fails to provide the necessary documents to adequately

Section V of Mr. Cupit's brief advances two reasons in support of his contention that the bankruptcy court erred in awarding treble damages.  Docket No. 15 at 24-25. First, Mr. Cupit argues that, because MacArthur failed to establish a defalcation under *Bullock*, there cannot "be a non-dischargeable award of damages, whether actual or treble."  *Id.* at 25-26.  However, because, as discussed above, Mr. Cupit fails to identify reversible error in the bankruptcy court's ruling on MacArthur's defalcation claim, this argument is without merit.  Second, Mr. Cupit argues that the bankruptcy court erred in finding that he knowingly used trust funds in a manner that was certain to deprive MacArthur of those trust funds.  *Id.* at 25.  Mr. Cupit contends that the bankruptcy court should have given greater weight to his trial testimony, where he stated that he was confident PRI would eventually be able to repay MacArthur.  *Id.* at 26 (citing R. II at 39:1-15).  However, Mr. Cupit's contention is conclusory and, for the above stated reasons, Mr. Cupit has failed to provide sufficient evidence to overturn the bankruptcy court's credibility determination.  Mr. Cupit has not, for example, provided any of the Job Cost Detail records, PRI's financial records from the relevant time period, PRI's answer to ARS's complaint, or other documentary evidence before the bankruptcy court that could bear on the credibility of Mr. Cupit's testimony that he intended to repay MacArthur.  Mr. Cupit asserts that the bankruptcy court's finding is undercut by the fact that PRI continued to pay MacArthur after August 9, 2011.  *Id.*  However, Mr. Cupit fails to establish such a fact by citation to evidence in the record.  The Court will therefore summarily affirm this aspect of the bankruptcy court's decision.

---

review the bankruptcy court's conclusion.

Section VI of Mr. Cupit's brief argues that the bankruptcy court erred in calculating damages.  Docket No. 15 at 26-27.  First, Mr. Cupit contends that the bankruptcy court's "percentage damage award is not appropriate because the damages can be calculated by a review of PRI's Job Cost Detail [Exhibit B] for each of the 24 unpaid MacArthur invoices at issue."  Docket No. 15 at 27.  Mr. Cupit has not, however, provided Exhibit B and, as a result, the Court lacks sufficient materials to review this aspect of the bankruptcy court's decision.[10]

Mr. Cupit argues that MacArthur's damages award should be reduced because the bankruptcy court erred in determining that his conduct constituted a defalcation after August 5, 2011.  *Id.* at 27.  Mr. Cupit contends that it "is undisputed that Cupit was actually served with the State Court Complaint [in the ARS suit] on August 9, 2011," not on August 5, 2011 as the bankruptcy court found.  Docket No. 15 at 15 (citing Exhibit 10).  At trial, Mr. Cupit testified that, on August 9, 2011, he was served with the ARS complaint.  R. II at 45:21-44:6.  There appears to be no contradictory testimony on this point.  MacArthur's counsel then asked the court to take judicial notice of the ARS suit, but it is not clear that the bankruptcy court granted the request.  *Id.* at 46:24-47:5.  MacArthur then appears to have tendered three documents to the bankruptcy court: the complaint in the ASR suit, which was marked as Exhibit 8, a return of service, which

---

[10]Mr. Cupit contends that the Court can rely on "a summary of the relevant information on Exhibit B" that he prepared and included in his appendix.  *Id.*; *see also* Docket No. 15-1 at 26-27.  However, it does not appear that this summary was before the bankruptcy court; thus, the Court cannot appropriately consider it.  Moreover, the record does not contain the data underlying Mr. Cupit's summary of Exhibit B and, even if the Court were to consider Mr. Cupit's summary of Exhibit B, the Court could not adequately determine its relative importance in the absence of the parties' trial exhibits.  *See in re Black*, 130 F. App'x at 207.

was marked as Exhibit 9, and PRI's answer, which was marked as Exhibit 10.  *Id.* at

48:4-23.  The bankruptcy court sustained Mr. Cupit's objections to Exhibits 8 and 9, but

admitted Exhibit 10.  *Id.* at 49:19-25.

The bankruptcy court's order states that American Roofing Supply, Inc. sued PRI

on August 5, 2011 and identifies August 5, 2011 as the date on which Mr. Cupit was

chargeable with knowledge of his duties under the Construction Trust Fund Statute.  R.

I at 115.  In light of Mr. Cupit's testimony on the issue that he was served with the ASR

complaint on August 9, 2011, it is not clear, on the current record, what basis the

bankruptcy court had for concluding that Mr. Cupit was chargeable with knowledge of

the ARS complaint as of August 5, 2011.  However, the record is not complete and it

would be mere speculation to conclude, as Mr. Cupit's argument implicitly urges, that

the bankruptcy court's factual finding on this issue is incorrect.  *See In re Black*, 130 F.

App'x at 207.  Mr. Cupit relies on Exhibit 10 in support of his argument that Mr. Cupit

was actually served with the ARS complaint on August 9, 2011.  Docket No. 15 at 15.

However, based upon the trial transcript, it does not appear that the return of  service

(Exhibit 9) was admitted into evidence.  R. II at 49:19-25.  Thus, it is not entirely clear

that Exhibit 10 would support Mr. Cupit's argument, nor can the Court dismiss out of

hand the possibility that Exhibit 10 provides support for the bankruptcy Court's finding.[11]

Because Mr. Cupit has failed to provide the documents necessary to decide whether

the bankruptcy court erred in concluding that Mr. Cupit was chargeable with knowledge

---

[11]The bankruptcy court also cited Exhibit 6 in support of its finding that, beginning in August 2011, several suppliers sued PRI, but the record does not contain Exhibit 6. *See* R. 1 at 109.

of the contents of the ARS complaint as of August 5, 2011 – as opposed to August 9, 2011 –, the Court will summarily affirm the bankruptcy court's finding on that issue and, as a result, Mr. Cupit's argument that the bankruptcy court improperly calculated damages fails.[12]

### B.  Sufficiency of Appendix

Mr. Cupit's appeal fails for an additional reason.  Federal Rule of Bankruptcy Procedure 8018(d) requires that an appellant's appendix contain material relevant to the appeal.  Bankruptcy Appellate Panel of the Tenth Circuit Rule 8018-1 requires that exhibits which are part of the record "be included in the appendix when they are relevant to an issue raised on appeal and are referred to in the brief."  "The Court need not remedy any failure of counsel to provide an adequate appendix."  *In re Long*, 255 B.R. at 245; *see also* 10th Cir. Rule 30.1(B) ("the court need not remedy any failure of counsel to provide an adequate appendix").  By failing to include the relevant trial exhibits, Mr. Cupit's appendix is plainly deficient and therefore "deprives [him] of the right to challenge the judgment of the [bankruptcy] court."  *See Accurate Autobody*, 340 F.3d at 1121.

## IV.  CONCLUSION

The Court is under no obligation to, of its own accord, remedy Mr. Cupit's failure to provide a sufficient record or failure to file a conforming appendix.  *In re Black*, 130 F. App'x at 207.  Thus, for the foregoing reasons, the Court concludes that Mr. Cupit's

---

[12]Even if the Court were to decide, which it does not, that Mr. Cupit did not receive the ARS complaint until August 9, 2011, Mr. Cupit's failure to provide Exhibit B and other supporting trial exhibits would render it impossible to determine how, if at all, such a conclusion would affect the bankruptcy court's damages calculation.

failure to provide a sufficient record precludes him from establishing reversible error.[13]

It is therefore

      **ORDERED** that the Bankruptcy Court's decision is **AFFIRMED** and this matter is

closed.

      DATED September 29, 2015.

                 BY THE COURT:

                 s/Philip A. Brimmer
                 PHILIP A. BRIMMER
                 United States District Judge

---

[13]The Court need not reach MacArthur's arguments in resolving this appeal and does not consider any arguments raised for the first time in Mr. Cupit's reply brief. MacArthur's request for attorney's fees is procedurally improper.  *See* D.C.COLO.LCivR 7.1(d).